No. 38,473

W. H. GLASS, JR., *Appellee,* v. F. L. WIESNER, *Appellant.*

(238 P. 2d 712)

Opinion filed December 8, 1951.

*E. J. Malone,* of Hays, was on the briefs for the appellant.

*William Wagner, Jr.,* of Wakeeney, argued the cause, and *W. H. Wagner,* of Wakeeney, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover the balance alleged to be due under a transaction for the erection of certain grain storage facilities and to foreclose a mechanic's and materialman's lien. Judgment was for plaintiff, W. H. Glass, Jr., and the defendant, F. L. Wiesner, alone appeals.

The sufficiency of pleadings is not involved. They need be

sketched only sufficiently to ascertain the issues on which the action was tried.

The petition discloses the plaintiff was engaged in the business of selling various steel materials and constructing steel buildings at Wakeeney. The petition alleged and set forth a highly fragmentary written agreement which was as follows:

"AGREEMENT FOR CONSTRUCTION AND ERECTION
OF ELEVATOR AND GRAIN STORAGE
"(as per drawing)

"This agreement entered into this 3rd day of May, 1949, between Fred Wiesner, party of the first part, and W. H. Glass, Jr., party of the second part. Agree that the party of the first part will pay on the following basis for the following services rendered by party of the second part.

"Payment to be (⅓) (one third) $8400 down with the signing of this agreement and the bill of material. The second ⅓ (one-third) $8400 payment to be made on erection of head house super structure. Balance to be paid on completion of said agreement of fabricating and erection of the Quonset and superstructure contained in the complete elevator and grain storage facilities contained in the drawings.

"It is understood that party of the first part to be responsible for all concrete work and purchase and installation of all equipment in said structure with the assistance and any engineering help that the party of the second part can offer. Any changes will be made by the mutual agreement of both parties.

"In the event there is additional stran steel purchased for the building, as per drawing, over and above the purchase order agreement it will be sold to the party of the first part at the party of the 2nd. part's cost F.O.B. Scott City, thereby foregoing *and* profit on additional stran steel.

| "Bill of material | $18,213 |
| "Fabrication & Erection | 6,443 |
| "Sales tax | 364.26 |
| "Total | $25,024.26 |
| "FRED L. WIESNER. | 1st party 5-4-49 |
| "W. H. GLASS, JR. | 2nd Party" |

In addition to the amount claimed under the written contract plaintiff made claim for other materials furnished and labor performed pursuant to the alleged requests of the defendant Wiesner. The structures were erected on the right of way of the Union Pacific Railroad company on which it was alleged Wiesner or the defendant, F. & M. Enterprises, Inc., owned a lease.

These defendants filed an answer which admitted the execution of the written agreement but denied F. & M. Enterprises, Inc., was a party thereto and alleged that on the day the contract was executed plaintiff agreed to construct the storage facilities for the sum

of $25,024.26, except for certain cement work to be done and performed by the defendant Wiesner. It was also alleged that prior to the date of contract plaintiff was furnished drawings and that plaintiff on the date of the contract orally informed Wiesner he could build and construct the facilities at that price and they would fully and properly store and hold 130,000 bushels of wheat and such representations and warranties were relied upon by defendant. The answer also alleged certain defects in the construction of the elevator and the quonset addition which resulted in a failure of both the elevator and quonset bins to hold the grain. It further alleged Wiesner was required to repair such defects and that plaintiff was also indebted to him for certain lumber and materials used which belonged to the defendant. It was admitted Wiesner would be indebted to the plaintiff in the sum of $2,966.07 except for the offsets to which he was entitled which exceeded his indebtedness to the plaintiff by the sum of $182.58 for which he asked judgment against the plaintiff.

The defendants also filed a cross petition in which they sought damages by reason of the alleged defective construction of the storage facilities.

In the reply plaintiff denied all new matter contained in the answer, specifically denied any drawings were furnished to him to be used in the construction work and alleged it was orally agreed between him and the defendant Wiesner at about the time the memorandum attached to plaintiff's petition was executed that Wiesner would be solely responsible for the installation of equipment for the bracing of bins, for bracing the quonset, for doors, windows and any and all labor and material over and above the material and erection thereof as disclosed in the memorandum agreement. He also alleged there was no agreement concerning the bracing of the bins except as expressly directed by the defendant. He also denied he had used any lumber belonging to the defendant which had not been returned to him.

Plaintiff testified no drawings referred to in the memorandum agreement were attached thereto at the time it was executed or thereafter. No drawings were introduced in evidence. There appear to have been some pencil sketches which were discussed during the building operations but they were not in evidence. There was sharp conflict in the testimony generally and particularly with regard to the necessary bracing of both the elevator and the quonset

addition. Plaintiff, in substance, also testified he remonstrated against the premature use of the building for the storage of the 1949 crop, without additional bracing of the storage facilities, and that he warned Wiesner against the excessive amount of grain he was storing and that he (plaintiff) refused to be responsible for the results but Wiesner insisted on such storage. Although plaintiff's testimony that he warned defendant against inadequacy of the structures to hold such a large amount of grain was corroborated the defendant denied such a conversation and contended he followed plaintiff's advice that the buildings were adequate for the purpose. On such conflicting testimony the trial court made the following findings:

"On the issues tried in this case on March 8, 1951, the court finds generally in favor of the plaintiff and against the defendants.

"Without attempting to limit this general finding, the court specifically finds that the plaintiff made no warranties whatever concerning the structure erected by him; that the defendant, F. L. Wiesner, contracted for the steel building for a particular purpose, and selected the builder thereof, knowing that the plaintiff had not previously erected a structure of this kind; that the matter of bracing was discussed and agreed upon by both the plaintiff and the said defendant from time to time as the construction of the building progressed, and if the plaintiff made any statements to the effect that he thought the bracing was adequate or that he would accept responsibility therefor, they were mere expressions of opinion and were unsupported by any independent consideration. The contract between the parties merely called for the erection for a certain building from 'stran-steel' in accordance with certain drawings which are not in evidence. Nothing had been agreed upon relative to bracing at the time of the original contract made on or about May 3, 1949, but said defendant had expressly rejected the plan of bracing as now contended for in sub paragraphs 1 and 2 of his answer, by reason of the cost thereof. The defendant was faced with a time element because harvest was coming on and he needed storage space. On at least one occasion when discussing the manner of bracing, he directed where braces should be installed saying to the plaintiff that he would be responsible for what happened to the elevator and he was then warned by the plaintiff not to put any heavy wheat in that compartment, which warning he disregarded.

"The court further finds that the plaintiff fully performed his

primary obligation for the erection of the building at a cost of $25,-020.26 of which the defendant paid $24,000.00 leaving a balance due of $2,020.26. There appears to be no dispute concerning the amount of this item.

"Additional labor and material was likewise used on the work, as itemized in two items of $929.73 and $799.55 in Exhibit C attached to plaintiff's petition. Both of these items were paid in full.

"Other items as used in the construction are listed on pages 2 and 3 of said Exhibit C in the amounts of $1,212.89, $5,059.56, $3,945.78, and $2,664.00, totalling $12,882.23. Adding to this, $2,020.26 gives us a balance of $14,902.49, against which the defendant, Wiesner, is entitled to credit of $1,009.80 paid by check on August 19; $4,-750.00 paid by check on August 22; and $3,515.87 credit by labor on August 22; a total of $9,275.67. This leaves a balance of $5,626.82 due plaintiff as of September 10, 1949.

"The court disallows plaintiff's claim of $96.18, $4.45, $7.04, $18 and $243.30 as listed at the bottom of page 3 of said Exhibit C, for the reason that the evidence fails to show any liability of the defendant therefor.

"Judgment is rendered for the plaintiff against the defendant F. W. Wiesner, for $6,136.94 (which includes interest to this date) with interest thereon at the rate of six percent per annum from this 14th day of March, 1951, and for the foreclosure of the mechanic's lien set out in plaintiff's petition against all of the defendants. Order of sale to issue after 10 days, on praecipe, and costs taxed to the defendant, F. L. Wiesner.

"The court further finds that on Nov. 12, 1949, defendant The Lee Hardware Company, a corporation, caused to be filed in the office of the Clerk of the District Court of Trego County, Kansas, a mechanic's lien arising from the construction of the elevator and grain storage facilities involved in this case, upon which there is a balance due to said The Lee Hardware Company of $231.67 with interest thereon at six percent per annum from Nov. 12, 1949; the court further finds that the identical items claimed by said defendant are included in the lien filed herein by the plaintiff and that the defendant The Lee Hardware Company should recover from the plaintiff the sum so found to be due and owing to it, to be paid out of the judgment rendered herein in favor of the plaintiff and against the defendant F. L. Wiesner."

There is no cross-appeal by plaintiff from the last finding and it, of course, must stand.

It is thus observed the trial court found generally in favor of the plaintiff and against the defendants. It also expressly resolved the important factual issues in favor of the plaintiff.

The defendant Wiesner relies on the doctrine of implied warranty and cites statements of law from various cases. He leans heavily on a statement contained in *City of McPherson v. Stucker*, 122 Kan. 595, 256 Pac. 963, which reads:

"When the principal object of a contract is to obtain a result, there has been no compliance with the contract until the result has been obtained.

" 'Where the contract contains a guarantee or warranty, express or implied, that the builder's work will be sufficient for a particular purpose, or to accomplish a certain result, unless waived by the owner, the risk of accomplishing such purpose or result is on the builder and there is no substantial performance until the work is sufficient for such purpose or accomplishes such result.' (9 C. J. 745.)" (P. 600.)

We adhere to that rule. The trouble here lies in its application to the instant facts. Clearly the memorandum agreement contains no express warranties. Moreover it nowhere attempts to imply what amount of grain the elevator and quonset addition were expected to accommodate. In view of the conflicting testimony the court had a right to believe the facilities were constructed in accordance with Wiesner's directions and against plaintiff's admonition that they were inadequate and that defendant agreed to assume the risk. Under such circumstances there is no room for the application of the doctrine of implied warranties against the builder.

Defendant further asserts the court erred in refusing to permit him to prove damages resulting from certain alleged defects. It appears the excluded testimony pertained to defects not alleged among those listed in defendants' answer in response to a motion to allege specifically the defects complained of. Furthermore, since the court reached the conclusion, on the basis of issues joined by the petition and answer, that the defects, if any, resulted from Wiesner's directions then manifestly Wiesner would be entitled to no damages alleged in the cross petition resulting from such construction.

This was primarily, if not entirely, a fact case. All the material facts were generally, if not specifically, resolved in favor of the plaintiff and against the defendants. There was no error in overruling the motion for a new trial.

In the light of the record presented here the judgment must be, and it is, affirmed.